JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
MarketPlace North, LLC

**DEFENDANTS**
Motion Industries, Inc.

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Stephen Hessen
Kreis, Enderle, Hudgins & Borsos, P.C.
PO Box 4010, Kalamazoo, MI 49003 (269) 324-3000

Attorneys *(If Known)*
John Conway
SouthBank Legal: LaDue | Curran | Kuehn
100 E. Wayne St., Suite 300, South Bend, IN 46601 (574)968-0760

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question *(U.S. Government Not a Party)*

☐ 2 U.S. Government Defendant

☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1332
Brief description of cause:
Lawsuit claiming breach of Lease

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $
276,757.94

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE
08/29/2019

SIGNATURE OF ATTORNEY OF RECORD
/s/John A. Conway P80364

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MARKETPLACE NORTH, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CASE NO:** |
| **v.** | ) | |
| | ) | |
| **MOTION INDUSTRIES, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**NOTICE OF REMOVAL**

For its Notice of Removal of this action to the United States District Court for the Western District of Michigan, Southern Division, the Defendant, Motion Industries, Inc. ("Motion"), states as follows:

**Introduction**

1.     On or about July 22, 2019, the Plaintiff, MarketPlace North, LLC ("MarketPlace"), filed suit against Motion in the Michigan Circuit Court for the County of St. Joseph, under Cause No. 2019-565-CK (the "Lawsuit"). A true and correct copy of MarketPlace's Complaint is included in Exhibit A.

2.     Motion first received notice of the Lawsuit on or about July 31, 2019.

3.     MarketPlace's Complaint includes one claim, which is for breach of contract.

**Subject Matter Jurisdiction: Diversity of Citizenship**

4.     This Court has subject matter jurisdiction based on diversity of citizenship.

5.     Motion is a citizen of the States of Delaware and Alabama because it is a Delaware corporation whose principal place of business is located at 1605 Alton Road, Birmingham, Alabama 35210. 28 U.S.C. § 1332(c)(1).

6.     For diversity purposes, limited liability companies and other unincorporated entities have the citizenship of each partner or member. *See Delay v. Rosenthal Collins Group, LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009).

7.     MarketPlace is a Michigan limited liability company (*see Complaint*, ¶ 1), and, upon information and belief, no member is a citizen of Delaware or Alabama.

8.     Complete diversity of citizenship exists between MarketPlace and Motion.

9.     MarketPlace alleges that Motion's alleged breach of a contract damaged MarketPlace in an amount of at least $276,757.94. *See Complaint*, ¶ 14. Therefore, the amount in controversy exceeds $75,000, exclusive of interest and costs. *See id.*

10.     Therefore, this Court has subject matter jurisdiction over this case based on diversity of citizenship under 28 U.S.C. § 1332.

### Procedural Requirements

11.     The Lawsuit is properly removed to this Court pursuant to 28 U.S.C. § 1441.

12.     Under W.D. Mich. LR 3.2.(a), this Court is the proper district court for this case because it arose in St. Joseph County, State of Michigan. Venue is proper under 28 U.S.C. §§ 1391(b)(2) and 1446(a).

13.     This Notice of Removal is accompanied by copies of all process, pleadings, and orders served upon Motion and all documents filed by Motion in this action. These documents are attached to this Notice as Exhibit A.

14.     The Defendant is filing this Notice of Removal within 30 days after it received the initial pleading setting forth the claim for relief; therefore, the time for filing this Notice of Removal under 28 U.S.C. § 1446(b) has not yet expired.

15.     A true copy of this Notice of Removal will be filed with the Clerk of the Circuit Court for the County of St. Joseph as provided by law.

16.     This Notice of Removal is signed in compliance with Rule 11 of the Federal Rules of Civil Procedure.

WHEREFORE, Motion notifies this Court of the removal of this action from the Circuit Court for the County of St. Joseph, Michigan.

Respectfully submitted,

/s/ John A. Conway
John A. Conway (P80364)
Paul E. Harold (25917-71)
SouthBank Legal: LaDue | Curran |Kuehn
100 E. Wayne Street, Suite 300
South Bend, IN 46601
Tel: (574) 968-0760
Fax: (574) 968-0761
jconway@southbank.legal

*Attorney for Defendant Motion Industries, Inc.*

## CERTIFICATE OF SERVICE

I certify that on August 29, 2019, I served the foregoing document with, via regular US first class mail, correct postage prepaid to the following counsel of record:

Stephen J. Hessen (P41663)
Kreis, Enderle, Hudgins & Borsos, P.C.
P.O. Box 4010
Kalamazoo, MI 49003

I also certify that on August 29, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the attorneys of record in the case.

/s/ John A. Conway

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARKETPLACE NORTH, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO:** |
| | ) | |
| **MOTION INDUSTRIES, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

Pursuant to 28 U.S.C. § 1746, the undersigned states as follows:

1.      My name is Paul A. Brooker. I am the Senior Counsel of Genuine Parts Company, a Georgia corporation and the parent company of Motion Industries, Inc., a company identified in the Complaint that is attached hereto as Exhibit A.

2.      Genuine Parts Company's common stock is traded on the New York Stock Exchange under the ticker symbol "GPC".

3.      Motion Industries, Inc., is a Delaware corporation whose principal place of business is located at 1605 Alton Road, Birmingham, Alabama 35210. Motion Industries, Inc., is a wholly owned subsidiary of Genuine Parts Company.

4.      Motion Industries, Inc., first received notice of the lawsuit that is the subject of the Complaint on or about July 31, 2019.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 27, 2019.

Paul A. Brooker

**Exhibit A**
**State Court Filings**

[Attached]

```
DATE:  8/27/2019              Civil Case History              Page:    1
                                 CONTRACTS
State of MICHIGAN                                          Case Number
45TH CIRCUIT/COUNTY CLERK                         19-       565-CK -1
ORI: MI750015J
```

---

```
Assigned To: HON. PAUL STUTESMAN                  Jury Demand:
Claim Amount:                                     Filed Date:    7/25/20
Satisfaction of Judgment Date:                    Closed Date:
```

---

```
Litigant D001:     MOTION INDUSTRIES INC
                   RESIDENT AGENT:C T CORPORATION SYSTEM
                   2 NORTH JACKSON ST
                   SUITE 605
                   MONTGOMERY, AL36104
Attorney #1: CONWAY, JOHN A.               Disp. Date:
Attorney #2:                               Disp. Method:
                                           Disp. Code:
Judgment Notes:


Judgment Amounts:
```

---

```
Litigant P001:     MARKETPLACE NORTH LLC
                   P.O. BOX 350
                   THREE RIVERS, MI49093
Attorney #1: HESSEN, STEPHEN J             Disp. Date:
Attorney #2:                               Disp. Method:
                                           Disp. Code:
Judgment Notes:


Judgment Amounts:
```

| | | | | SUMMONS SERVICE HISTORY | | | |
|---|---|---|---|---|---|---|---|
| Lit. | Sum. Type | Srv. Type | Iss. Date | Srv. Date | Fil. Date | Ans. Date | Fee |
| D001 | | PR | 7/25/2019 | 7/31/2019 | 8/19/2019 | 8/21/2019 | |

| Date | Code | Description | User |
|---|---|---|---|
| Judge | | Action Date Action Time | |
| 7/25/2019 | | COMPLAINT FILED RECT #135294 | PATCHM |
| 7/25/2019 | SI | SUMMONS ISSUED | PATCHM |
| 8/16/2019 | APP | APPEARANCE FILED | CLARKD |
| 8/19/2019 | | PROOF OF SERVICE ON SUMMONS FILED | CLARKD |
| 8/21/2019 | | DEFENDANT MOTION INDUSTRIES, INC'S ANSWER TO | FRYEA |
| 8/21/2019 | | COMPLAINT FILED | FRYEA |
| 8/22/2019 | NOP | NOTICE OF PRE-TRIAL | SANDUSKY |
| PS | | 9/23/2019       9:00 | |

 **CT Corporation**

**Service of Process Transmittal**
07/31/2019
CT Log Number 535969736

| | |
|---|---|
| **TO:** | Scott Smith, Corporate Counsel<br>Genuine Parts Company<br>2999 Wildwood Pkwy<br>Atlanta, GA 30339-8580 |
| **RE:** | **Process Served in Alabama** |
| **FOR:** | Motion Industries, Inc.  (Domestic State: DE) |

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | MarketPlace North, LLC, Pltf. vs. Motion Industries, Inc., Dft. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Exhibit(s) |
| **COURT/AGENCY:** | St. Joseph County - 45th Judicial Court, MI<br>Case # 2019565CK |
| **NATURE OF ACTION:** | Complaint for breached the Lease |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Montgomery, AL |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 07/31/2019 at 13:00 |
| **JURISDICTION SERVED :** | Alabama |
| **APPEARANCE OR ANSWER DUE:** | Within 21 days after receiving this summons |
| **ATTORNEY(S) / SENDER(S):** | Stephen J. Hessen<br>KREIS, ENDERLE, HUDGINS & BORSOS, P.C.<br>P.O. Box 4010<br>Kalamazoo, MI 49003<br>269-324-3000 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 07/31/2019, Expected Purge Date: 08/05/2019<br><br>Image SOP<br><br>Email Notification,  Kathleen Eidbo  KATHLEEN_EIDBO@GENPT.COM<br><br>Email Notification,  Christopher Galla  chris_galla@genpt.com<br><br>Email Notification,  Scott Smith  SCOTT_SMITH@GENPT.COM<br><br>Email Notification,  Patsy Green  patsy_green@genpt.com<br><br>Email Notification,  Norma Pittillo  norma_pittillo@genpt.com<br><br>Email Notification,  Ernie Wetzler  Ernie_Wetzler@genpt.com<br><br>Email Notification,  ROBERT SWANN  robert.swann@motion-ind.com<br><br>Email Notification,  Carolyn Green  carolyn.green@motion-ind.com |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

 CT Corporation

**Service of Process Transmittal**
07/31/2019
CT Log Number 535969736

TO: Scott Smith, Corporate Counsel
Genuine Parts Company
2999 Wildwood Pkwy
Atlanta, GA 30339-8580

RE: **Process Served in Alabama**

FOR: Motion Industries, Inc.  (Domestic State: DE)

SIGNED:        C T Corporation System
ADDRESS:       2 North Jackson Street
               Suite 605
               Montgomery, AL 36104
TELEPHONE:     212-590-9070

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

| Approved, SCAO | | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|---|
| **STATE OF MICHIGAN**<br>45TH | **JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT<br>COUNTY PROBATE** | **SUMMONS** | **CASE NO.**<br>*19-565 CK* |

| Court address | Court telephone no. |
|---|---|
| 125 West Main Street, P. O. Box 189, Centreville, MI 49032 | 269-467-5542 |

| Plaintiff's name(s), address(es), and telephone no(s).<br>MarketPlace North, LLC<br>P.O. Box 350<br>Three Rivers, MI 49093 | | Defendant's name(s), address(es), and telephone no(s).<br>Motion Industries, Inc.<br>Resident Agent: C T Corporation System<br>2 North Jackson St., Suite 605<br>Montgomery, AL 36104 |
|---|---|---|
| Plaintiff's attorney, bar no., address, and telephone no.<br>Stephen J. Hessen (P41663)<br>Kreis, Enderle, Hudgins & Borsos, P.C.<br>P.O. Box 4010<br>Kalamazoo, MI 49003<br>(269) 324-3000 | v | *Assigned to*<br>HON. PAUL STUTESMAN |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. Attached is a completed case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**

☒ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____.

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk. | **SUMMONS** |

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. YOU HAVE 21 DAYS after receiving this summons and a copy of the complaint to file a written answer with the court and serve a copy on the other party or take other lawful action with the court (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>July 25, 2019 | Expiration date *<br>October 24, 2019 | Court clerk Lindsay Oswald | *Pauline M Clark* |
|---|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court. | Deputy

MC 01  (6/19)  **SUMMONS**                                      MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

## STATE OF MICHIGAN
## IN THE 45ᵀᴴ CIRCUIT COURT FOR THE COUNTY OF ST. JOSEPH
125 W. Main St., P. O. Box 189, Centreville, MI 49032   269-467-5542

MarketPlace North, LLC,

         Plaintiff,

v.

Motion Industries, Inc.,

         Defendant.

Case No. 2019-_____565_____-CK

---

Stephen J. Hessen (P41663)
Kreis, Enderle, Hudgins & Borsos, P.C.
Attorneys for Plaintiff
P.O. Box 4010
Kalamazoo, MI  49003-4010
(269) 324-3000
shessen@kreisenderle.com

---

## COMPLAINT

The Plaintiff, MarketPlace North, LLC, by and through its attorneys, Kreis, Enderle, Hudgins & Borsos, P.C., for its Complaint against Motion Industries, Inc., states as follows:

### JURISDICTION AND VENUE

1.     Plaintiff, MarketPlace North, LLC, is a Michigan limited liability company ("MarketPlace"), doing business at 54 ½ Main Street, P. O. Box 350, Three Rivers, MI 49093.

2.     Defendant, Motion Industries, Inc. ("Motion"), upon information and belief, is a Delaware company doing business at 1605 Alton Road, Birmingham, AL 35210 and whose registered office is c/o C T Corporation, 2 North Jackson St., Suite 605, Montgomery, AL 36104.

3.     The amount in controversy exceeds $25,000.00.

4.      The jurisdiction is proper in this court because this lawsuit involves real property that is the subject of a lease agreement that is located at 360 Enterprise Drive, Three Rivers, Michigan 49093 ("Property").

5.      On May 21, 2018, Plaintiff and Motion executed a certain Lease attached as **Exhibit 1** (the "Lease"), for certain space located in building located on the Property (the "Leased Premises").

6.      Motion never occupied the Property, never made any payments that were required under the Lease, and has materially breached the Lease.

7.      Plaintiff is entitled to any of its damages which flow from Motion's breach of the Lease.

8.      Motion is obligated under Section 3 of the Lease to pay annual "Base Rent" of $21,258.00 ($1,771.50 on a monthly basis), subject to annual increases based upon the increase in the Consumer Price Index (the "CPI").

9.      For purposes of this lawsuit, Plaintiff is using two percent (2%) increases in the CPI to establish damages.

10.     Motion is further obligated under Section 4 of the Lease to pay annual "Additional Rent" of $21,258.00 ($1,771.50 on a monthly basis), subject to annual increases based upon the increases in the CPI. Plaintiff again assumes 2% increases.

11.     Motion is obligated under Section 9 of the Lease to pay utilities.

12.     Plaintiff incurred $23,836.48 for Lease expenditures prior to the Lease signing and $22,113.50 for expenditures after the Lease signing.

13.     The Lease provides for interest payments of ten percent (10%) per annum on all unpaid amounts due under the Lease.

14.     Plaintiff estimates damages at a minimum of $276,757.94, but which actual sum will depend on the actual CPI increase from year to year and the actual cost of the utilities for the Leased Premises.

15.     Motion is also obligated under Section 24 of the Lease to pay Plaintiff's attorney fees and costs related to Defendant's default or breach of the Lease.

16.     Demands made by Plaintiff to Defendant to pay a just and equitable amount due have been refused.

WHEREFORE, Plaintiff prays for a Judgment in an amount which this Court determines to be just and equitable, including interest, costs, and attorney fees.

KREIS, ENDERLE,
HUDGINS & BORSOS, P.C.

DATED: July 22, 2019            BY: _Stephen J. Hessen (P41663)_ (P73526)
                                Stephen J. Hessen (P41663)
                                Attorney for Plaintiff

## LEASE

This lease ("Lease") has an effective date of _05/21/18_____, 2018 ("Effective Date"), and between MarketPlace North LLC, a Michigan limited liability company, whose address is 54 ½ Main Street, P.O. Box 350, Three Rivers, Michigan 49093 ("Landlord"), and Motion Industries Inc., 1605 Alton Road, Birmingham, AL 35210, ("Tenant").

### Agreement

The parties hereto agree to the following Lease terms for which there is adequate consideration.

1.      Location.  Landlord is the owner of real property located at 360 Enterprise Drive, Three Rivers, Michigan 49093 ("Landlord's Property"). Landlord, in consideration of the rents to be paid and the covenants and agreements to be performed by Tenant, hereby leases to Tenant approximately seven thousand eighty six (7,086) square feet of a larger building ("Building") located on Landlord's Property (the "Leased Premises"). The Landlord's Property is legally described on attached Exhibit A and the Building and Tenant's Leased Premises are more particularly shown on the drawing attached hereto as Exhibit B. There is a truck ramp with three (3) truck dock doors within the Leased Premises. For all purposes under this Lease, the parties agree that the square footage of the Leased Premises is 7,086 feet, even if the actual square footage is different. Notwithstanding the foregoing, however, the Landlord is attempting to lease vacant space in the Building in which the Leased Premises is located and a future tenant or tenants may request use of the same three (3) truck doors south of the truck dock area and the ground level overhead door, which shall originally be part of the 7,086 square foot Leased Premises and which are shown on Exhibit C. The Leased Premises are a combination of the two areas labeled Motion Industries and 3,100 square foot proposed common dock space ("Common Dock Space") on Exhibit C.

The areas shown on Exhibit C as "VS" are currently or may be vacant space which Landlord will be leasing to tenants. As illustrated on Exhibit C, one or more of the tenants may need access to the Common Dock Space. If the Common Dock Space is utilized by future tenants, then Landlord will notify the Tenant and in such case, the Common Dock Space may be configured by the Landlord which shall include the construction of a north wall and an overhead door for Tenant as shown on Exhibit C. The exact configuration and square footage of the Common Dock Space and the Leased Premises after Landlord leases vacant space to other tenants shall be subject to Landlord's determination but in no case shall the north wall of the Leased Premises extend south of the south wall of the Common Dock Space on which the

PLAINTIFF'S EXHIBIT
1
FEREFAD 800-631-6989

overheard door is located. During the reconfiguration period, Tenant shall not pay Rent or Additional Rent on the Common Dock Space. When the reconfiguration is complete (including the construction of the new wall and overhead door), then the Tenant shall pay Rent and Additional Rent on its Leased Premises based on the square foot price set forth below and a prorated amount of Rent and Additional Rent for the Common Dock Space depending on the number of users. For example only, if there is only one other tenant using the Common Dock Space with Tenant, then Tenant shall pay one-half (1/2) of the Rent and Additional Rent for the square footage of the Common Dock Space as the same is calculated by the Landlord. If there are three (3) tenants total, then Tenant shall pay one-third (1/3) of the Common Dock Space, etc.

2.    **Term.**  The term of this Lease shall be five (5) years, commencing on the earlier of sixty-five (65) days from the Effective Date or the date on which Landlord's Work (defined below) is substantially complete and the Leased Premises have been delivered to Tenant (the "Commencement Date"), and ending five (5) years thereafter, unless sooner terminated under the provisions hereof. As used herein, the term "Lease Year" shall mean each twelve (12) month period of this Lease, commencing on the first date of the term of this Lease, and each anniversary date thereafter.

The Leased Premises shall be deemed not to be delivered if (a) Landlord has not provided Tenant with keys or lock combinations for all doors or gates securing the Leased Premises, (b) Tenant cannot obtain all utilities to the Leased Premises within a commercially reasonable period by request to the appropriate utility service provider unless such failure is due to the fault of Tenant, (c) the Leased Premises are in the possession of any third party claiming a right of possession through the Landlord, or (d) the Leased Premises are not free of trash, debris or personal property of the Landlord or any third party.

Provided this Lease is in force and Tenant is not in default beyond any applicable cure period, Tenant may have the option to extend this Lease for one (1) additional term which shall not be less than three (3) years nor more than five (5) years (the "Renewal Period"). In the event Tenant intends to extend this Lease, as above provided, Tenant shall give written notice thereof to Landlord which notice shall (a) define what period Tenant wishes the Renewal Period to be between three (3) years and Five (5) years; and (b) be delivered not more than twelve (12) months nor less than six (6) months prior to the end of the initial Lease term, or the right to renew shall be void and not in effect. The Lease "Term" shall include, when used herein, the initial term together with any renewal terms that are available and exercised hereunder.

Notwithstanding anything to the contrary contained in this Lease, Tenant shall have the right to terminate this Lease at any time after the thirty-sixth (36th) month of the Term by providing Landlord with prior written notice, provided, however, that a contingency of early termination, Tenant shall pay to Landlord, prior to the termination date, the following: (a) a prorated portion of the  $10,000.00 contribution which Landlord is paying towards the completion of Landlord's Work;  (b) the equivalent of twenty-five percent (25%) of the remaining Rent and Additional Rent (based on the amounts then due for Rent and Additional Rent) for remainder of the Term of this Lease; and (c) a prorated portion of the broker commission that Landlord is paying for the five (5) year Term of this Lease.

Thus, for illustration purposes only, this Lease is forfeited by Tenant after three (3) years, then the amount owed by Tenant upon termination to Landlord shall be forty percent (40%) of the $10,000.00 contribution pursuant to Subsection (a) above (i.e., $4,000.00), and 40% of the total broker commission Landlord has paid to Callander Commercial for its commission for Subsection (c). For Subsection (b), the Rent and Additional Rent owed would be 25% of the total Rent and Additional Rent owed for the remaining two (2) years of the Lease Term.

All prorations under this Paragraph 2 shall be based on daily amount of the charges over the five (5) year Lease Term.

3.      **Rent.**  The monthly base rent (sometimes "Base Rent") for the Leased Premises during the first Lease Year shall be $3.00 per square foot or $21,258.00 annually and $1,771.50 per month. The monthly Base Rent for each Lease Year during the remainder of the Lease Term (including the Renewal Period, if any) shall be increased annually, on the anniversary date, by the CPI (consumer price index) as follows:

A.      **Cost of Living Increases:** The minimum monthly Base Rent shall be increased by the cost of living as determined by the Official Consumer Price Index published by the Bureau of Labor Statistics, United States Department of Labor. The Consumer Index to be used will be that for "Urban Wage Earners and Clerical Workers (Revised, United States City Average) (1982-1984=100)", hereinafter called "CPI".

An increase in monthly Rent for the second Lease Year shall be based upon a comparison of the last CPI published prior to the end of the first Lease Year, to the last CPI published prior to Commencement Date of this Lease. The amount of the increased monthly Rent to be effective for such second Lease Year shall be calculated by multiplying the monthly rental then in effect by the last CPI published prior to the end of the first Lease Year, divided by the last CPI published prior to Commencement Date. The amount of the increased monthly Rent to be effective for subsequent Lease Years during the term of this Lease shall be calculated by multiplying the minimum monthly Rent due for such Lease Year under the provisions of this paragraph by the last CPI published prior to the end of the previous Lease Year, divided by the last CPI published prior to commencement of the previous Lease Year. If the monthly Rent shall not be increased for one rental year, then the increased monthly Rent for the next Lease Year shall be calculated by multiplying the Rent in effect at the end of said Lease Year by the last CPI published prior to the end of said Lease Year divided by the last CPI published prior to the commencement of the last Lease Year during which there was a monthly rental increase. In the event that the CPI shall, during the term of this Lease, cease to be used by the Bureau of Labor Statistics as a means of measuring the cost of living, the parties hereto agree that the formula used above may be revised to reflect a conversion of the new standard for measuring the cost of living adopted by the appropriate branch of the federal government. In the event that no new standard is available, the Landlord shall

.mµ

Lease
Page 4 of 21

adopt a substitute index or substitute procedure which reasonably reflects and monitors cost of living.

The Monthly Base Rent and all other charges due and payable by Lessee hereunder are, collectively, referred to herein as the "Rent". Lessor agrees to accept Rent from Lessee via electronic account deposit. Lessor shall provide Lessee with a fully completed ACH rent deposit application and an IRS Form W-9 in order to facilitate electronic payment. Lessee shall provide Lessor with an ACH rent deposit application form upon the execution and delivery of this Lease. Lessor should deliver the ACH rent deposit application and IRS Form W-9 prior to the Rent Commencement Date to ensure prompt payment of the first month's Rent. The first month's Rent payment shall not be deemed past due until Lessor has returned the completed ACH rent deposit application and an IRS Form W-9 to Lessee or Lessee and Lessor mutually agree to alternative Rent payment arrangements. Rent or other payments will be deemed paid on time if actually received by Lessor or Lessor's agent on or before the payment due date regardless of the address to which the Rent or other payment is sent and received.

4.      **Additional Rent.**  As additional rent, the Tenant shall pay all charges and costs due by Tenant under this Lease (sometimes "Additional Rent" and, together with Base Rent, the "Rent").   Such Additional Rent shall be payable by Tenant within thirty (30) days after presentation to Tenant by Landlord of an itemized bill for any portion of Additional Rent or within the timeframes set forth herein, whichever is longer.   For calendar year 2018, the Operating Costs shall be $3.00 per square foot or $21,258.00 annually and $1,771.50 to be paid monthly toward the Landlord Maintenance and Repair expenses (collectively the "Operating Costs") as set forth below which shall be due with the monthly Base Rent. Tenant's contribution to the Operating Costs shall also increase by the CPI as Base Rent is increased.

Monthly Rent shall be paid on or before the first day of each month, and prorated, if necessary, for the first and last months of the Lease.  All Rent shall be payable at the office of Landlord, or such other place as Landlord may designate, without any prior demand therefor and without any deductions or set-off whatsoever.

5.      **Security Deposit.** Intentionally Omitted.

6.      **Taxes.**  During the term of this Lease, and any Renewal Period, if any, Landlord shall be responsible to pay all taxes and special assessments related to Landlord's Property. Notwithstanding the foregoing, Tenant shall be fully responsible to pay all personal property taxes, income taxes, or any other taxes related to Tenant's use and occupation of the Leased Premises. Tenant shall pay all taxes timely, on or before the date said taxes are due.

7.      **Use.**  Tenant covenants that the Leased Premises shall be used and occupied only for parts and supplies storage and distribution, for offices and for sales.   No other purpose or purposes will be allowed without the prior written consent of Landlord.   Tenant shall also comply with all federal, state and local statutes, laws, rules and regulations governing Tenant's business on the Leased Premises.

Lease
Page 5 of 21

8.    **Repairs and Maintenance.**

A.    **Tenant's Repair and Maintenance.** Tenant shall maintain and repair the entire interior of the Leased Premises, at its sole expense, including, but not limited to, all tenant improvements, interior walls, glass, doors, dropped ceilings, floor coverings, wall treatments, light fixtures, built in cabinetry, window treatments and any changes to the foregoing. All janitorial service to the Leased Premises shall be arranged for and paid for by Tenant. Tenant shall also be responsible for the maintenance, and repair, at its sole expense, of all interior systems and lines exclusively serving the Leased Premises, including the water, sewer, mechanical, electrical and plumbing systems,. Tenant shall maintain a contractual maintenance contract on the HVAC system within the Leased Premises and provide a copy of such contract to the Landlord.

B.    **Landlord's Repair and Maintenance.** Landlord shall, at its sole expense and in a commercially reasonably condition, maintain and repair the Building structure, foundation and roof, and all exterior portions of Landlord's Property, including, but not limited to, the parking, driveway, and landscape areas, unless the damage, waste, or need for repair or maintenance is caused by Tenant or Tenant's employees, customers, invitees, agents, or representatives (collectively the "Associated Parties" of a party), in which case all costs and expenses to maintain or repair Landlord's Property shall be paid by the Tenant. Landlord shall further provide all snow plowing, ice removal, mowing, landscaping, and all other necessary maintenance and replacement of Landlord's Property as reasonably determined by Landlord; provided, however, the Tenant shall be responsible, at its cost, to shovel snow and ice and salt in front of and surrounding the Leased Premises as required.

Landlord shall ensure that prior to the Commencement Date, the existing HVAC is in good working order and condition. Landlord will provide Tenant with a letter stating the condition of the HVAC from Kalamazoo Mechanical (its HVAC contractor for 15 years) prior to lease signing. If Kalamazoo Mechanical does not find the existing HVAC system to be in the above stated condition, Landlord will repair or replace the unit prior to occupation of the premises by Tenant. Once Tenant occupies the space, the maintenance and repair of the HVAC system will be the responsibility of the Tenant.

Subject to provisions relating to condemnation below or as otherwise set forth in this Lease, no abatement, diminution, or reduction of the Rent or other charges required to be paid by Tenant pursuant to the terms of this Lease shall be claimed by, or allowed to, Tenant for any inconvenience, directly or indirectly, by any present or future federal, state, or local laws, rules, requirements, orders, directions, ordinances or regulations or by priorities, rationing or curtailment of labor or materials, or by war, civil commotion, strikes or riots, or any matter or thing resulting therefrom, or by any other cause or causes beyond the control of Landlord, nor shall this Lease be affected by any such causes.

9.    **Utilities.** Heat, air conditioning, electrical, water, sewer, and all other utilities servicing the Leased Premises shall be arranged and paid for by Tenant. Telephone and cable

service provided to the Leased Premises shall be at Tenant's expense and arranged for by it. Neither the interruption nor cessation of utility services ("Utilities Stop") shall render the Landlord liable in any respect. If a Utilities Stop prevents Tenant from operating its business in the Leased Premises in any material respect and if such utility services are not restored within three (3) days of such Utilities Stop, then the Rent shall abate until such services are restored. If utility services are not restored within thirty (30) days of a Utilities Stop, Tenant shall have the right to terminate this Lease. Notwithstanding the foregoing, Rent shall not abate nor shall Tenant terminate this Lease due to a Utilities Stop caused by a general outage due to weather or other general conditions or to any Utilities Stop caused by Tenant.

10.    Insurance.  Landlord shall keep in force all risk insurance policies covering all buildings and other improvements located on Landlord's Property, excluding Tenant improvements. Nothing herein shall be deemed to grant to Tenant a beneficial interest in such policies. The coverage under such policies shall be of a type and in amounts determined in the sole discretion of Landlord, but at least to replacement costs. Notwithstanding the foregoing, Tenant shall insure all of its own personal property which it brings onto the Leased Premises and shall indemnify, defend, and hold Landlord harmless from any loss, costs, or expenses to Tenant's own personal property which it must insure hereunder.

Landlord shall keep in full force a policy of public liability and property damage insurance with respect to the Landlord's Property including the Building and Leased Premises, in which the limits of public liability shall not be less than $2,000,000 in the aggregate per person and per accident and in which the property damage liability shall not be less than $2,000,000. The policy shall name Landlord as an insured, and show Tenant as tenant in the Leased Premises.

Tenant shall keep in full force a policy of public liability and property damage insurance with respect to the Leased Premises, and the business operated by Tenant in the Leased Premises in which the limits of public liability shall not be less than $2,000,000 in the aggregate per person and per accident and in which the property damage liability shall not be less than $2,000,000. The policy shall name Tenant as an insured, and show Landlord as building owner and Landlord, and any person, firms or corporation designated by Landlord, as additional insureds.

A certificate of insurance shall be delivered to Landlord prior to execution of this Lease and thereafter when Tenant changes insurance companies or the terms of the policy are modified.

Each insurance policy required hereunder shall (a) be obtained from companies having a minimum rating of A minus (A-) by A.M. Best Rating Company; (b) insure the interests of Landlord regardless of any breach or violation by Tenant of warranties, declarations, or conditions contained in such policies or any action or inaction of Tenant or of any other person; and (c) contain a clause that such all policies and coverages evidenced thereby will be primary with respect to any policies carried by Landlord, and that any coverage carried by Landlord will be excess insurance.

11.    Waiver of Subrogation.  Landlord and Tenant hereby release and discharge the other party, and the other party's employees, agents, and representatives, of and from any and all

liability arising from any loss, damage, injury, or death which is actually covered or required to be covered under this Lease, by insurance policies obtained by either party related to any losses, damages, or injury which occur on the Landlord's Property. Each party agrees to waive, on behalf of itself and its insurers, all rights of subrogation under any policies which are required to be obtained under this Agreement. If an endorsement by the insurance company is required for the waiver of subrogation set forth above, then both parties shall obtain such endorsements

12. **Assignment.** Landlord understands that Tenant requires the right to sublet or assign the Leased Premises or any portion thereof, without any Landlord participation or recapture rights, to any reputable tenant subject to Landlord's prior written consent, which shall not be unreasonably withheld, conditioned or delayed. Landlord agrees to review and consent or deny such sublease or assignment within ten (10) days of written notice to Landlord form the Tenant. Landlord approval shall not be necessary should Tenant sublet or assign the Leased Premises or any portion thereof to any successor to Tenant resulting from a merger or consolidation of Tenant and to any entity under the common control of Tenant. None of the rights referred to in this request for proposal shall be nullified by the making of an assignment or sublease or conditioned upon Tenant's occupancy of any part of the Leased Premises. Any profits derived from any sublease shall be Tenant's.

13. **Landlord's Work.** Landlord shall perform the initial alterations for the Leased Premises (collectively the "Landlord's Work") and complete the same and turn over the Leased Premises to the Tenant at least five (5) days before the Commencement Date. The tentative plans and specs for Landlord's Work is set forth on attached Exhibit D and those plans and specifications shall be finalized as soon as possible. If the parties cannot agree on such final plans and specifications for Landlord's Work within seven (7) days of the date of full execution of this Lease, then Landlord only may terminate this Lease without liability between the parties. The parties shall execute a Commencement Date rider after the Commencement Date is established in accordance with this Section 13. Landlord shall pay $10,000.00 of the cost of Landlord's Work and Tenant is committed to paying the remainder within ten (10) days after completion of the Landlord's Work and Landlord has sent bills to Tenant for said costs and expenses together with all invoices related to same. Tenant's failure to pay any such sum to Landlord, after notice and cure period pursuant to Section 24 below, shall be a breach of this Lease, and permit Landlord to stop construction and pursue Tenant for all said costs. Tenant shall have reasonable access as approved by the Landlord to the Leased Premises after the Effective Date and prior to the Commencement Date, provided that Tenant obtains approval from Landlord for said access and its work does not interfere with Landlord's Work. The parties shall cooperate with each other.

14. **Alterations and Fixtures.** Tenant shall make no alterations, additions or improvements ("Alterations") to the Leased Premises without first obtaining the prior written consent of Landlord, which shall not be unreasonably withheld, delayed or conditioned, and which shall include any initial alterations installed prior to the Commencement Date. All Alterations made by Tenant (except only movable equipment and fixtures) shall become the property of Landlord on the termination of the Lease or the termination of Tenant's occupancy of the Leased Premises. Notwithstanding the foregoing, Landlord shall also have the right to give written notice to Tenant to remove Tenant's Alterations, which must be determined at the time of approving such Tenant Alterations, and if so directed as part of the consent to Alterations that

Lease
Page 8 of 21

such must be removed, then in such event, Tenant shall remove them at Tenant's sole cost and expense and Tenant shall repair all portions of the Leased Premises which are damaged or destroyed by Tenant's removal of its Alterations to the Leased Premises. If Tenant fails to remove all of Tenant's Alterations upon written demand by Landlord, then Landlord may remove or dispose of the same, without liability to the Tenant, and the Tenant shall reimburse Landlord for all costs and expenses which Landlord incurs in removing, storing and disposing of the same.

15. **Liability and Indemnity.** Except for the willful action or gross negligence of Landlord or its Associated Parties, Tenant agrees that Landlord and Landlord's Associated Parties, shall not be liable for, and Tenant waives all claims for loss or damage to, Tenant's business or damage or injury to person or property sustained by Tenant or any person claiming by, through, or under Tenant, resulting from any accident or occurrence in, on or about the Landlord's Property, including the Leased Premises, including, but not limited to, claims for loss, theft, damage or injury resulting from (1) any equipment or appurtenances becoming out of repair on Landlord's Property; (2) injury done occasioned by wind, weather or other causes beyond the Landlord's reasonable control; (3) bursting or leaking water, gas or steam pipes or breakage or failure of any electrical circuits, (4) any act or neglect of Tenant or any occupants of the Landlord's Property or any other person; or (5) any other cause of any nature.

Tenant shall defend, indemnify and hold Landlord harmless from (1) any liability for injury to persons or property suffered by anyone upon the Leased Premises during the term of this Lease; (2) any work or thing done in, or about the Leased Premises or any part thereof by Tenant or its Associated Parties; (3) any use, non-use, possession, occupation condition, operation, maintenance or management of the Leased Premises or any part thereof by Tenant or its Associated Parties; (4) any act or omission of Tenant or any of its Associated Parties; or (5) any failure on the part of Tenant to perform or comply with any of the covenants, agreements, terms or conditions contained in this Lease with which the Tenant must comply or perform; provided, however, that such damage or injury is due to acts or negligence of Tenant, or arises out of Tenant's use and/or occupancy of the Leased Premises and said indemnification shall not apply if the injury or damages set forth above are the result of the willful or grossly negligent acts or omissions of the Landlord, its Associated Parties.

16. **Liquidated Damages.** Should Tenant wrongfully withhold possession of the Leased Premises from Landlord after the termination of this Lease and written notice to vacate the Leased Premises is given by Landlord to Tenant, the damages for which Tenant shall be liable to Landlord for such detention shall be and are hereby liquidated at a sum equal to one hundred fifty percent (150%) of the rate of rental stipulated herein for the period of such detention, which damages shall be deemed to be reasonable and not a penalty under Michigan law. Any holdover by Tenant after the termination of the original Term of this Lease or Renewal Period shall be deemed to be a tenancy at will and permit Landlord to terminate Tenant's tenancy without a notice to quit or other notice and allow Landlord to file a complaint for termination of Tenant's tenancy under the Summary Proceedings Act and in such event, Tenant shall owe Landlord rent and other charges due under this Lease until the date that Tenant vacates the Leased Premises. Notwithstanding the above Tenant shall not have any liability for the first thirty (30) days of possession after the end of the Lease term.

Lease
Page 9 of 21

17.     **Right to Mortgage: Attornment: Estoppel Certificate.** Landlord reserves the right to subject and subordinate this Lease at all times to the lien of any mortgage or mortgages now or hereafter placed upon Landlord's interest in the Leased Premises. Tenant covenants and agrees to execute and deliver, upon demand but not more than once in any twelve (12) month period, such further instrument or instruments subordinating this Lease to a lien of any such mortgage or mortgages. Landlord's right to subordinate this Lease shall be coupled with an interest and be deemed irrevocable, and Tenant's failure to execute and deliver instruments as aforesaid shall be deemed a default in the performance of this Lease, and Landlord may exercise any and all remedies accruing to Landlord upon such default by Tenant. Tenant agrees to attorn to any mortgagee taking possession of the Leased Premises, including the Landlord and any successor to Landlord.

18.     **Non-Disturbance Agreement.** Landlord will agree to attempt to provide Tenant with a commercially reasonable non-disturbance agreement in favor of Tenant from any ground lessors, mortgage holders or lien holders of Landlord currently existing or who later come into existence at any time prior to the expiration of the Term of this Lease in consideration of, and as a condition precedent to, Tenant's agreement to be bound by the subordination Section of the Lease (Section 17). Such agreement shall be provided within sixty (60) days of the Commencement Date.

Notwithstanding the foregoing, the Tenant agrees that its business operations shall not disturb the services and other worship activities of the neighboring VxV Ministries church (the "Church") located adjacent to the Leased Premises, including because of loud noises, odors, glaring lighting, or other nuisance like activities. Currently, the Church conducts its services and worship activities on weekdays after 6 p.m. and all day Sunday; however, the Tenant at all times will work with the Church so that its operations are not unreasonably disturbed given the nature of its business.

19.     **Improper Use.** Tenant shall not conduct or permit to be conducted on the Leased Premises any business which is contrary to any federal, state, or local statutes, laws, rules, regulations, or ordinances. Tenant shall not violate any federal, state, or local statute, laws, rules, regulations, or ordinances with respect to the Leased Premises and shall hold Landlord harmless from any damage accruing to it from the failure of Tenant fully to keep this covenant.

20.     **Damage or Destruction.** If the Building of which the Leased Premises are a part shall be damaged or destroyed, Landlord shall restore, repair and rebuild the Leased Premises to substantially the condition as it existed immediately prior to such damage or destruction; provided, that if the area rendered untenantable shall exceed twenty (20%) percent of the area of the Building or twenty (20%) percent of the value of the Building (as reasonably determined by Landlord), then Landlord, by written notice to Tenant and within thirty (30) days of the start of such period of such damage or destruction, may elect to terminate this Lease. Such thirty (30) day period for exercise of Landlord's election to terminate shall be reasonably extended to thirty (30) days after settlement or denial of any claim for loss or damage to the Leased Premises, which claim is presented to any insurance carrier of Landlord. Should the Landlord fail or refuse to fully repair the Leased Premises or the Building within said ninety (90) days, Tenant may terminate this Lease.

Lease
Page 10 of 21

If the Leased Premises shall be rendered untenantable, in whole or in part, by reason of casualty or other event there shall be an equitable abatement of rent in proportion to the area of the Leased Premises that has been damaged to such area immediately before such damage. For so long as Tenant shall continue any business on the Leased Premises or any portion thereof or shall continue to occupy the Leased Premises or any portion thereof or store property thereon, that portion of the Leased Premises shall not be deemed unsuitable or untenantable.

21.   **Security.**  Landlord does not have a security system at this location. Landlord grants Tenant approval to install, at its expense, any security measures deemed necessary, as long as it does not negatively impact Landlord or Landlord's other Tenants. The same shall at all times remain in working order and be part of the Leased Premises (and not retained by Tenant) after termination of this Lease.

22.   **Condemnation.**  If the whole or any part of the Leased Premises shall be taken by the power of eminent domain, this Lease shall cease as to the part taken as of the date title shall vest in the condemnor; and the rent reserved shall then abate proportionately as to the part so taken, or shall cease if the entire Leased Premises shall be taken. A sale in lieu of condemnation shall be considered a "taking." At the option of either party, this Lease shall terminate if the part of the Leased Premises so taken shall be such so as to prevent the continued operation of Tenant's normal business activity on the Leased Premises. Tenant shall not share in the proceeds of any condemnation award except as to an award made to Tenant for cost of moving, loss of business, and trade fixtures, and after payment of Tenant's fair share of the expenses and fees of obtaining such award. If neither party elects in writing to terminate this Lease within thirty (30) days of a partial taking by giving written notice of election to the then party, Landlord shall, upon receipt of the award for taking, make the necessary repairs and alterations so as to constitute the portion of the Leased Premises not taken a complete architectural unit.

23.   **Construction Liens.**  Tenant will not create or permit to be created, or to remain, and will promptly discharge at its sole cost and expense, any lien, encumbrance or charge upon the Leased Premises or any part thereof, or upon Tenant's leasehold interest therein within thirty (30) days after request thereof by Landlord.

24.   **Default and Reentry.**  Tenant shall observe and perform all the covenants, conditions, and agreements herein. Tenant shall be in default of this Lease if Tenant:

a.   shall default in the payment of any installment of Base Rent, Additional Rent, or any other sum specifically to be paid by Tenant hereunder and such default shall not have been cured within ten (10) days after Landlord gives Tenant written notice specifying such default (provided that if Tenant fails to pay Rent or Additional Rent timely on three (3) or more occasions during the Term of this Lease, then Tenant shall not be given a cure period to pay said Rent or Additional Rent nor shall Tenant have the right to redeem once a Judgment has been entered in any summary proceeding action); or

b.   shall default in the observance or performance of any of Tenant's covenants, agreements or obligations hereunder, other than the covenants to pay Rent or any other sum herein specified to be paid by Tenant, and such default shall not have been cured within thirty (30) days after Landlord shall have given to Tenant written notice specifying such default

(provided, however, that if the default complaint shall be of such nature that the same cannot be completely remedied or cured within such thirty (30) day period, then such default shall not be an enforceable default against Tenant for the purposes of this paragraph if Tenant shall have commenced curing such default within such thirty (30) day period and shall proceed with reasonable diligence and in good faith to remedy the default complained of) provided however, that if Tenant fails to comply with this Lease and receives three (3) or more notices to cure the same during the Term of this Lease, then thereafter, Landlord may enforce default with notice to Tenant and Tenant shall not have the right to redeem any such default thereafter if Landlord terminates Tenant's tenancy whether by summary proceedings or otherwise); or

      c.    shall, finally and without further possibility of appeal or review, (i) be adjudicated bankrupt or insolvent, or (ii) have a receiver or trustee appointed for all or substantially all of its business or assets on the ground of Tenant's insolvency, or (iii) suffer an order to be entered approving of a petition filed against Tenant seeking reorganization of Tenant under the federal bankruptcy laws or any other applicable law or statute of the United States or any State thereof; or

      If Tenant defaults under this Lease as set forth above, Landlord may terminate the Lease and re-enter and repossess the Leased Premises. Landlord may, because of the forfeiture of the Lease, terminate this Lease by filing a summary proceedings action, or may take any other action which is provided under Michigan law. Landlord may, without cancellation of this Lease, avail itself of the privilege of possession above mentioned, and relet the Leased Premises in its own name as agent of Tenant for such Rent and upon such terms as Landlord may deem advisable, and if the full amounts due by Tenant under the Lease have not been paid to Landlord, Tenant shall pay all deficiencies, including any expense incurred by such reletting, including, but not limited to, the cost of renting, altering and redecorating and all of Landlord's attorney fees and court costs related thereto, whether suit is filed by Landlord or not, and no breach or default by Tenant shall be deemed cured until Tenant has paid all of Landlord's costs related to Tenant's default. Landlord may relet the Leased Premises for the balance of Tenant's unexpired Lease Term, or any portion thereof, or relet the Leased Premises beyond the unexpired Lease Term, without releasing Tenant from Tenant's obligation hereunder to pay all deficiencies and expenses incurred by reletting, altering and redecorating and any other amounts due by Tenant hereunder. Landlord agrees to make a commercially reasonable effort to mitigate the loss by leasing the Leased

      25.    **Landlord's Inspection.**  Landlord shall have the right to enter the Leased Premises at all reasonable hours with notice, except in the case of an emergency where notice will not be required, to exhibit (only during the last 90 days of the lease to prospective tenants) or examine the same, to make such repairs, additions or alterations as may be necessary for the safety, improvement or preservation thereof, or of any part of the Building of which the Leased Premises are a part.

      26.    **Waiver.**  No waiver of any condition of this Lease shall be implied from Landlord's omission to declare a forfeiture on account of its violation, if such violation be continued or repeated. No express waiver shall affect any other than the conditions specified, and that only as specifically stated. Any waiver by either party of any provision of this Lease shall not imply a subsequent waiver of that or any other provision, and any failure to enforce



Lease
Page 12 of 21

strict performance of any provision of this Lease shall not be construed as a waiver or
relinquishment to enforce strict performance in respect to such provision on any future occasion.

27.    **Payment after Termination.**  No payment of money by Tenant to Landlord after
the termination of this Lease, or after giving of any required notice by Landlord to Tenant, shall
reinstate, continue or extend the terms of this Lease or affect any notice given to Tenant prior to
the payment of such money, it being agreed that, after the service of notice of the
commencement of a suit or after final judgment granting Landlord possession of the Leased
Premises, Landlord may receive and collect any sums of rent due or any other sums of money
due under the terms of this Lease, and the payment of such sums of money, whether as rent or
otherwise, shall not waive said notice or in any manner affect any pending suit or any judgment
theretofore obtained.

28.    **Personal Property After Termination.**  If Tenant shall fail to remove all of its
personal property or trade fixtures from the Leased Premises after termination of this Lease for
any cause whatsoever, Landlord may, at its option, remove the same in any manner that Landlord
shall choose, and store said property or fixtures without liability to Tenant for loss thereof, and
Tenant agrees to pay Landlord, on demand, any and all expenses incurred in such removal,
including court costs and attorneys fee and storage charges on such effects for any length of time
the same shall be in Landlord's possession; or Landlord may, at its option, without notice or
liability to Tenant, dispose of or destroy said property or fixtures, or sell the same, or any portion
of the same, at private sale and without legal process, for such price as Landlord may obtain and
apply the proceeds of such sale upon any amounts due under this Lease from Tenant to Landlord
and all expenses related to the removal and sale of said property and fixtures.  Any remaining
balance shall be paid to the Tenant.

29.    **Remedies Not Exclusive.**  Except as expressly set forth herein, all rights and
remedies of Landlord or Tenant herein shall be cumulative, and none shall be exclusive of any
other rights and remedies allowed by law.

30.    **Notices.**  Whenever in this Lease it shall be required or permitted that notice or
demand be given or served by either party upon the other, such notice or demand shall be in
writing and shall be deemed to have been duly given or served upon deposit in the United States
Mail, postage prepaid, or sent by overnight delivery and addressed as follows:

|                  |                                            |
|------------------|--------------------------------------------|
| To Landlord:     | MarketPlace North, LLC                     |
|                  | Attn:  Thomas D. Meyer                      |
|                  | 54-½ Main Street                           |
|                  | P.O. Box 350                               |
|                  | Three Rivers, MI 49093                     |
|                  |                                            |
| with a copy to:  | Jeffrey D. Swenarton                       |
|                  | Kreis, Enderle, Hudgins & Borsos, P.C.     |
|                  | One Moorsbridge, P.O. Box 4010             |
|                  | Kalamazoo, MI 49003-4010                   |

Lease
Page 13 of 21

    To Tenant:   Motion Industries, Inc.
              1605 Alton Rd.
              Birmingham, AL 35210

   31.  **Signs.** Tenant may install signs on the Leased Premises only with the prior written consent of the Landlord, whose consent shall not be unreasonably withheld, conditioned, or delayed, and provided the same comply with all local ordinances. Tenant shall remove its signs upon termination of this Lease at its cost and repair any damage to the Leased Premises caused by such removal.

   32.  **Broker.** Landlord shall pay Landlord's Broker a fee per listing agreement which fee shall be split equally with the Tenant's Broker. No other commissions or fees shall be paid.

     Landlord's Broker:  Maureen T. Daniel
               Callander Commercial
               628 W. Milham Avenue
               Portage, MI 49024

     Tenant's Broker:  Jay Cook
              CRESA Chicago
              150 N. Wacker Drive, Suite 2900
              Chicago, IL 60606

Landlord and Tenant shall indemnify each other from the claims of any other agents or brokers claiming by or through the Landlord or Tenant, respectively. The provisions of this Section 35 shall survive the expiration or earlier termination of this Lease.

   33.  **Condition of Leased Premises.** Except as otherwise set forth in this Lease and except for Landlord's Work, the Leased Premises shall be delivered to Tenant, and Tenant accepts the Leased Premises in "AS IS," WHERE IS" condition, and hereby warrants that Landlord shall have no responsibilities with respect to any condition of the Leased Premises except as specifically set forth herein, including, but not limited to, any physical, structural or environmental condition of the Leased Premises. Landlord represents and warrants that as of the Commencement Date: (i) the Leased Premises and the Building are in good condition and repair; (ii) that all electrical, plumbing, heating, ventilating, air conditioning, water heating and sprinkler (if any) systems and all fixtures, components and equipment in and serving the Leased Premises are in good condition and in proper working order; and (iii) that the Building and the Leased Premises shall be in compliance with all present and applicable Federal, State and local environmental, safety, health, public accommodation (ADA), zoning and building laws, codes, ordinances, rules, regulations ("Applicable Codes"). If the Leased Premises are or are later alleged to be in violation of Applicable Codes due to conditions in existence on the Commencement Date or because of conditions not related to Tenant's use of the Leased Premises, it shall be Landlord's responsibility, at Landlord's sole cost, to resolve such violation and/or bring the Leased Premises into compliance therewith.

   34.  **Landlord's Advances.** If Tenant shall default in any payment or expenditure other than rent required to be paid or expended by Tenant under the terms hereof, Landlord may,

Lease
Page 14 of 21

at its option and after applicable notice and cure periods, make such payment or expenditure, in which event the amount thereof shall be payable as rental to Landlord by Tenant on the next ensuing rent day, together with interest at twenty (20%) percent per annum or the highest rate allowed by law, whichever is less, from the date of such payment or expenditure by Landlord until repayment thereof. On default in such payment, Landlord shall have the same remedies as on default in payment of rent.

35.   **Interest.** Any installment of monthly rent payable hereunder by Tenant to Landlord not paid within ten (10) days of receipt of written notice from Landlord shall bear interest at the rate of ten (10%) percent per annum from and after the due date until the same shall be paid, at the sole option of Landlord. By charging interest on payments which shall be overdue, Landlord shall not be deemed to have waived its right to declare a default in the Lease and demand possession.

36.   **Showing of Leased Premises.** For a period commencing ninety (90) days prior to the termination of this Lease, Landlord may show the Leased Premises to prospective Tenants.

37.   **Peaceful Possession.** Tenant, on paying the rental herein provided, and performing all the covenants and agreements herein contained to be performed by it, in the manner and at the time set therefor, shall and may peacefully and quietly have, hold and occupy the Leased Premises for the Term.

38.   **Interpretation.** All negotiations, considerations, representations, and understandings between the parties are incorporated herein, and may be modified or altered only by agreement in writing between the parties.

39.   **Partial Invalidity.** If any term, covenant or condition of this Lease or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term, covenant or condition to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and each term, covenant or condition of this Lease shall be valid and enforced to the fullest extent permitted by law.

40.   **No Option.** The submission of this Lease for examination does not constitute a reservation of or option for the demised Leased Premises.

41.   **Sale of Leased Premises.** Upon any sale or transfer, including any transfer by operation of law, of the Leased Premises, Landlord shall be relieved from all subsequent obligations under this Lease.

42.   **Captions.** The captions in this Lease are inserted only for convenience and are not to be construed as part of this Lease or as in any way affecting it.

43.   **Binding Effect.** The covenants, conditions and agreements made and entered into by the parties hereto shall inure to the benefit of any shall be binding upon their respective heirs, legal representatives, successors and assigns, as the case may be. If more than one person

*MK*

Lease
Page 15 of 21

signs this Lease as Tenant or Landlord, the provisions hereof shall bind them jointly and severally.

44. **Building Regulations.** Tenant shall comply with any nondiscriminatory rules and regulations which are developed by Landlord from time to time which apply to tenants of the Landlord's Property. These rules and regulations shall include those which apply to the use, sharing, and maintenance of the Loading Dock Space as described above.

45. **Parking/Landlord's Property Alterations.** Tenant shall have the right to use, in common with other tenants or occupants of the buildings on the Landlord's Property, the parking area which may be established or altered by Landlord at any time, from time to time, during the term hereof. Landlord's sole obligation with respect to parking shall be to provide sufficient parking spaces so as to comply with local laws. The parking area shall be lighted and maintained by Landlord. Landlord shall be entitled to construct, at any time, additional buildings and improvements on Landlord's Property, including in the existing parking area, or otherwise alter Landlord's Property.

46. **Environmental.** Tenant shall strictly comply with all federal, state and local statutes, laws, rules or regulations pertaining to environmental matters and applicable to the operation of Tenant's business in the Leased Premises. Tenant shall not store any hazardous or toxic materials or substances on the Leased Premises. Tenant shall defend, indemnify, and hold Landlord harmless from any and all loss, cost, expense, damage or claim, of whatever name or nature, arising out of spill or release of any such hazardous substances on the Leased Premises by Tenant or Tenant's Associated Parties. Landlord represents to best of its knowledge that no environmental issue or violation exists at the Building or Leased Premises as of the Lease commencement.

47. **Time of Essence.** It is expressly understood and agreed by the parties hereto that TIME SHALL BE DEEMED AS OF THE VERY ESSENCE OF THIS AGREEMENT and all stipulations and agreements herein contained shall apply to and bind the heirs, executors, administrators, successors, executors, administrators, successors, and assigns of the parties hereto.

48. **Americans with Disabilities Act.** Tenant shall, at all times and at its own expense, comply with all federal, state and local laws, rules, regulations, ordinances and requirements regarding making facilities accessible to disabled persons, including, without limitation, the Americans with Disabilities Act (the "Act") with respect to the interior of the Leased Premises required solely by reason of Tenant's use and occupancy of the Leased Premises and to any Tenant's improvements, fixtures, and alterations. Tenant shall defend, indemnify and hold Landlord harmless from all claims, costs and liabilities, including reasonable attorneys' fees and costs actually occurred, arising out of or in connection with Tenant's failure to comply with the Act as required pursuant to the terms hereof. Landlord represents that as of the Lease commencement date, the Building and Leased Premises are in compliance with the Act.

49. **Counterparts; Signatures.** This document may be executed in one or more counterparts which when taken together shall be deemed to be one instrument, and facsimile or

**Lease**
**Page 16 of 21**

portable data format (PDF) copies of signatures on any such counterparts shall be deemed an original signature.

50.    OFAC Compliance.  Each party shall take any actions that may be required to comply with the terms of the USA Patriot Act of 2001, as amended, any regulations promulgated under the foregoing law, Executive Order No. 13224 on Terrorist Financing, any sanctions program administered by the U.S. Department of Treasury's Office of Foreign Asset Control or Financial Crimes Enforcement Network, or any other laws, regulations, executive orders or government programs designed to combat terrorism or money laundering, if applicable, with respect to the Lease. Each party represents and warrants to the other party that it is not an entity named on the List of Specially Designated Nationals and Blocked Persons maintained by the U.S. Department of Treasury, as last updated prior to the date of this Lease.

(Signature Page to Follow)



Lease
Page 17 of 21

IN WITNESS WHEREOF, the parties hereto have executed this Lease by its authorized representative.


**LANDLORD:**                                    **TENANT:**

MarketPlace North, LLC, a                        Motion Industries, Inc.
Michigan limited liability company

By: _____                    By: _____
Thomas D. Meyer
Its:  Member                                     Authorized Motion Industries Inc. signatory

Date: __5/21/18__                                Dated: __05-10-18__


<u>**Effective Date**</u>

The Effective Date shall be __05/21/18_____, 2018, which shall be the date on which the last party to sign this Agreement signs this Agreement.

Lease
Page 18 of 21

**EXHIBIT A**
**Legal Description**

Parcel #:

**75 051 510 005 00**     THREE RIVERS SCHOOL
                          School: 75080

Prop Addr:  **300 ENTERPRISE DR**
Legal Description:

COM AT N 1/4 COR SEC 7 T6S R11W TR 8 ALG 1/4 LN
577.60 FT TH S 89D 54M E ALG C/L ENTERPRISE DR
497.35 FT TO POB TH N 00D 11M 40S W 342.36 FT TH N
00D 01M 12S W 92.06 FT TH N 89D 58M 48S E 10 FT TH N
00D 01M 12S W 143.16 FT TH S 89D 54M E ALG C/L
LOVERS LAND 598.50 FT TH S 337.67 FT TH SWLY ALG
238.75 FT RAD CURVE TO RGT 367.23 FT TH N 89D 54M W
ALG C/L ENTERPRISE DR 368.17 FT TO POB. CITY OF
              *BALANCE OF DESCRIPTION ON FILE*

Lease
Page 19 of 21

EXHIBIT B



Lease
Page 20 of 21

## EXHIBIT C



Lease
Page 21 of 21

## EXHIBIT D

## LANDLORD'S WORK



### SCOPE OF WORK:

1-provide architectural and/or construction drawings for buildout.

2-install walls, drywalled, mudded, taped and painted for 12' x 12' manager office, 12' x 16' conference room, 9' x 8' restroom, 12' x 17' kitchen, 14' x 24' general office, and small mop sink/hand sink area.

3-install drop ceiling grids and ceiling panels in above-mentioned rooms

4-install 1 doorway with door to restroom and manager office; install 2 doorways with door to conference room, kitchen and general office

4-install 2' x 4' fluorescent light fixtures in above mentioned rooms, and electrical outlets in walls per code requirements.

5-install HVAC ductwork to each of the above-mentioned rooms.

6-install all restroom fixtures, including toilet, sink, grab bars, mirror – all to ADA specifications.

7-install mop sink and hand sink next to electrical panel room as shown.

8-install closet at the end of hallway next to conference room with door(s).

9-install glass panel "window" in office so that Tenant may see into warehouse area.

10-install glass panel window in general office in exterior wall.

11-remove existing overhead door, and replace with larger, wider overhead door in same location.

12-install 2 walls of kitchen cabinetry in kitchen as shown in floor plan with one sink.  Tenant to determine if any appliances are required.

*Landlord and Tenant to agree on specifications of buildout.

**STATE OF MICHIGAN**
**IN THE 45ᵀᴴ CIRCUIT COURT FOR THE COUNTY OF ST. JOSEPH**

| | | |
|---|---|---|
| MarketPlace North, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No.  2019-565-CK |
| | ) | |
| Motion Industries, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

---

John A. Conway (P80364)
SouthBank Legal: LaDue | Curran | Kuehn
100 E. Wayne Street, Suite 300
South Bend, IN 46601
(574) 968-0760
(574) 968-0761 (fax)
jconway@southbank.legal

ORIGINAL FILED

AUG 16 2019

LINDSAY OSWALD
ST. JOSEPH COUNTY CLERK

---

**APPEARANCE**

Please take notice that attorney John A. Conway of the law firm of SouthBank Legal: LaDue | Curran | Kuehn enters his appearance on behalf of Defendant Motion Industries, Inc.

**Respectfully submitted:**

/s/ John A. Conway
John A. Conway (P80364)
SouthBank Legal: LaDue | Curran |Kuehn
100 E. Wayne Street, Suite 300
South Bend, IN 46601
Tel: (574) 968-0760
Fax: (574) 968-0761
jconway@southbank.legal

Attorney for Defendant Motion Industries, Inc.

## CERTIFICATE OF SERVICE

I certify that on August 13, 2019, I filed the foregoing document with the Clerk of the Court, via regular US first class mail, correct postage prepaid, and a copy was sent to the following counsel of record:

Stephen J. Hessen (P41663)
Kreis, Enderle, Hudgins & Borsos, P.C.
P.O. Box 4010
Kalamazoo, MI 49003


/s/ John A. Conway

## STATE OF MICHIGAN
## IN THE 45ᵀᴴ CIRCUIT COURT FOR THE COUNTY OF ST. JOSEPH

MarketPlace North, LLC,      )
                                )

          Plaintiff,     )

v.                        )     Case No.  2019-565-CK
                                )

Motion Industries, Inc.,       )
                                )

          Defendant.   )

---

John A. Conway (P80364)
SouthBank Legal: LaDue | Curran | Kuehn
100 E. Wayne Street, Suite 300
South Bend, IN 46601
(574) 968-0760
(574) 968-0761 (fax)
jconway@southbank.legal

ORIGINAL FILED

AUG 2 1 2019

LINDSAY OSWALD
ST. JOSEPH COUNTY CLERK

---

### DEFENDANT MOTION INDUSTRIES, INC.'S ANSWER TO COMPLAINT

Defendant Motion Industries, Inc., by and through its attorneys, SouthBank Legal: LaDue | Curran | Kuehn, for its Answer to the Plaintiff's Complaint, states as follows:

### JURISDICTION AND VENUE

1.    Plaintiff MarketPlace North, LLC, is a Michigan limited liability company ("MarketPlace"), doing business at 54 ½ Main Street, P. O. Box 350, Three Rivers, MI 49093.

ANSWER:    Motion is without sufficient knowledge or information to admit or deny the allegations contained in paragraph 1 of Plaintiff's Complaint.

2.    Defendant, Motion Industries, Inc. ("Motion"), upon information and belief, is a Delaware company doing business at 1605 Alton Road, Birmingham, AL 35210 and whose registered office is c/o C TCorporation, 2 North Jackson St., Suite 605, Montgomery, AL 36104.

ANSWER:   Motion admits the allegations contained in paragraph 2 of Plaintiff's Complaint.

3.     The amount in controversy exceeds $25,000.00.

ANSWER:   Motion admits that Plaintiff seeks damages in excess of $25,000.00 but denies any of the relief it seeks.

4.     The jurisdiction is proper in this court because this lawsuit involves real property that is the subject of a lease agreement that is located at 360 Enterprise Drive, Three Rivers, Michigan 49093 ("Property").

ANSWER:   Motion admits the allegations contained in paragraph 4 of Plaintiff's Complaint.

5.     On May 21, 2018, Plaintiff and Motion executed a certain Lease attached as Exhibit 1 (the "Lease"), for certain space located in building located on the Property (the "Leased Premises").

ANSWER:   Motion admits the Lease attached as Exhibit 1 was signed, but denies all conditions precedent to its effectiveness took place. Motion denies any remaining allegation, in paragraph 5 of Plaintiff's Complaint.

6.     Motion never occupied the Property, never made any payments that were required under the Lease, and has materially breached the Lease.

ANSWER:   Motion admits that it does not occupy the property. Motion denies the remaining allegations contained in paragraph 6 of Plaintiff's Complaint.

7.     Plaintiff is entitled to any of its damages which flow from Motion's breach of the Lease.

ANSWER:   Motion denies the allegations contained in paragraph 7 of Plaintiff's Complaint.

8.     Motion is obligated under Section 3 of the Lease to pay annual "Base Rent" of $21,258.00 ($1,771.50 on a monthly basis), subject to annual increases based upon the increase in the Consumer Price Index (the "CPI").

ANSWER:   Motion states that the terms of the Lease speaks for themselves. Motion denies the remaining allegations in paragraph 8 of Plaintiff's Complaint..

9.     For purposes of this lawsuit, Plaintiff is using two percent (2%) increases in the CPI to establish damages.

ANSWER:   Motion denies Plaintiff is entitled to this measure of damages. Motion denies the remaining allegations in paragraph 9 of Plaintiff's Complaint.

10.     Motion is further obligated under Section 4 of the Lease to pay annual "Additional Rent" of $21,258.00 ($1,771.50 on a monthly basis), subject to annual increases based upon the increases in the CPI. Plaintiff again assumes 2% increases.

ANSWER:   Motion states that the terms of the Lease speaks for themselves. Motion denies the remaining allegations in paragraph 10 of Plaintiff's Complaint.

11.     Motion is obligated under Section 9 of the Lease to pay utilities.

ANSWER:   Motion states that the terms of the Lease speaks for themselves. Motion denies the remaining allegations in paragraph 11 of Plaintiff's Complaint.

12.     Plaintiff incurred $23,836.48 for Lease expenditures prior to the Lease signing and $22,113.50 for expenditures after the Lease signing.

ANSWER:   Motion is without sufficient knowledge or information to admit or deny the allegations contained in paragraph 12 of Plaintiff's Complaint.

13.     The Lease provides for interest payments of ten percent {10%) per annum on all unpaid amounts due under the Lease.

ANSWER:     Motion states that the terms of the Lease speaks for themselves. Motion denies the remaining allegations in paragraph 13 of Plaintiff's Complaint.

14.     Plaintiff estimates damages at a minimum of $276,757.94, but which actual sum will depend on the actual CPI increase from year to year and the actual cost of the utilities for the Leased Premises.

ANSWER:     Motion denies that Plaintiff is entitled to any relief.

15.     Motion is also obligated under Section 24 of the Lease to pay Plaintiffs attorney fees and costs related to Defendant's default or breach of the Lease.

ANSWER:     Motion states that the terms of the Lease speaks for themselves, Motion denies the remaining allegations in paragraph 15 of Plaintiff's Complaint.

16.     Demands made by Plaintiff to Defendant to pay a just and equitable amount due have been refused.

ANSWER:     Motion states that the terms of the Lease speaks for themselves, Motion denies the remaining allegations in paragraph 16 of Plaintiff's Complaint.

17.     Motion denies any allegations not expressly admitted to be true.

### AFFIRMATIVE DEFENSES

1.     Plaintiff failed to state a claim upon which relief can be granted.

2.     Plaintiff's claims are barred because it failed to mitigate its damages.

3.     Not all condition precedent have been satisfied so the Plaintiff's recovery is barred.

4.    Plaintiff failed to perform its obligations under the Lease and as a result its claims are barred.

Respectfully submitted,

/s/ John A. Conway
John A. Conway (P80364)
SouthBank Legal: LaDue | Curran |Kuehn
100 E. Wayne Street, Suite 300
South Bend, IN 46601
Tel: (574) 968-0760
Fax: (574) 968-0761
jconway@southbank.legal

ATTORNEY FOR DEFENDANT MOTION
INDUSTRIES, INC.

## CERTIFICATE OF SERVICE

I certify that on August 20, 2019, I served the foregoing document with, via regular US first class mail, correct postage prepaid to the following counsel of record:

Stephen J. Hessen (P41663)
Kreis, Enderle, Hudgins & Borsos, P.C.
P.O. Box 4010
Kalamazoo, MI 49003

/s/ John A. Conway



# FORTY-FIFTH JUDICIAL CIRCUIT OF MICHIGAN

Paul E. Stutesman, Chief Circuit Judge

Kathryn Griffin
Court Administrator

P.O. Box 189, Courts Building
Centreville, MI 49032-0189

TELEPHONE: (269) 467-5542
FAX: (269) 467-5558

August 22, 2019

Dear Counsel:

Enclosed please find a notice of pretrial conference and a Civil Pretrial Stipulation and Order form to be utilized at that conference. In a vast majority of cases, counsel are able, with the use of the form, to conduct a pretrial conference on their own without being present in the Courthouse and without the participation of the Court. In that situation, one original pretrial order containing the signatures of all counsel should be returned to the Court for entry prior to the date of the pretrial.

In the event the Judge's participation is necessary, please notify the Assignment Clerk of that fact and an appropriate time will be set. When the Judge participates in a pretrial conference, all counsel are required to be present in person.

I would also ask that no pretrial forms be returned to the Court unless they contain the signatures of all counsel and are ready for entry. In the past, individually signed forms have been filed and are of no use except adding to the thickness of the file.

Thank you for your consideration and should you have any questions or comments regarding these procedures, please contact me at the above phone number.

Very truly yours,

Kathryn Griffin
Court Administrator

**STATE OF MICHIGAN**
**45th CIRCUIT COURT FOR THE COUNTY OF ST. JOSEPH**
P O Box 189, Courts Building, Centreville, MI  49032


Plaintiff(s)

V                                                              File No.              C


Defendant(s)


**CIVIL PRETRIAL STIPULATION AND ORDER**

      The following pretrial order is based upon statements made by the parties either in person at a pretrial conference [which the Judge may preside at if requested] or by statements made by the parties.


1.     STATEMENT OF THE CASE (Attach separate sheets if necessary):

    ▪  Plaintiff(s)

    ▪  Defendant(s)


2.     Pleadings satisfactory       Yes_____       No_____
    If no, explain why:


3.     Parties and claims joined?     Yes_____       No_____
    If not, what action will be taken and by whom.


4.     Discovery ends four months from the date of the pretrial order.

    Stipulated       Yes_____       No_____
    If not, set forth what discovery period is necessary, by whom and a suggested cut-off date?

5.     Disclosure of witnesses and exhibits.  Each party shall submit its witness lists (including experts) and exhibit lists 2 months from the date of this order.

6.     ALL MOTIONS, INCLUDING DISPOSITIVE MOTIONS AND MOTIONS IN LIMINE  - must be filed and <u>heard</u> no later than 2 months following the end of discovery.

7.     ADR.  The parties are encouraged to seek an early resolution of their case through facilitative mediation.   Pursuant to the courts Alternative Dispute Resolution Plan, the Court will order mediation either upon the stipulation of the parties, on its own motion, or on the granting of a motion filed by one of the parties.

**Do all the parties involved stipulate to facilitative mediation in this cause?**

Yes_____        No _____

If so, mediation is hereby ordered and the parties have 14 days within which to notify the ADR Clerk of the mediator or mediation service they have selected.

If there is an objection to using facilitative mediation, the party(s) objecting shall give their reasons here, for their objection.

Within 21 days of the date of this order, the mediator or mediation service shall advise the ADR Clerk and all parties in writing who will be conducting the mediation and the date and times set for the mediation.  The ADR Clerk will provide a copy of this pretrial order to the mediator.

In the event that the parties do not notify the ADR Clerk of their selection within the 14 days allowed, the ADR Clerk will select a mediator from the list of civil mediators without notice to the parties and advise the parties or their attorneys who will be conducting the mediation.  The ADR Clerk will select the mediator in a manner set forth by the courts ADR Plan.

8.     Case Evaluation – All cases, whether mediated or not, will be scheduled for case evaluation approximately three months prior to trial.  Any objections to case evaluation shall be set forth in this statement.

If case evaluation is ordered, a date for case evaluation will be set later in this order and the parties are reminded that any adjournments or cancellations of the case evaluation within 14 days prior to its occurrence will result in a forfeiture of the case evaluation fees paid.

Terms:  Kalamazoo Co._____     St. Joseph Co._____

9.  Trial estimated to last _____ days.

And is either:  Jury_____          Non-jury_____

10.  Exhibits must be exchanged not later than 28 days prior to trial.  If no objections are filed within 14 days of trial, the exhibits are admitted into evidence.  Each party submitting exhibits must file a proof of service that the exhibits have been exchanged in accordance with this provision.  Such proof of service must detail each exhibit exchanged.  Any objection filed as required by this provision must refer to specific exhibits and must set forth the reason for the objection.

Objections to this order and the schedule contained therein must by made within 14 days of the date hereof or they are deemed waived.

11.  All depositions to be used at trial should be purged not later than one week before the trial or the objection shall be waived.

12.  Final Settlement Conference – A final settlement conference will be scheduled in every case after discovery has been completed, all motions have been heard and other ADR options have been explored.  The purpose of the final settlement conference is to give the parties and their counsel one last, court-assisted opportunity, before trial, to settle the case or to narrow the disputed issues and discuss how the trial will proceed.  Each party and person(s) with authority to settle the case, as well as the attorney who will be trying the case, are required to attend.  The Court's representative, in the event settlement is not realized at the conference, will discuss the provisions and requirements regarding the mechanics of trial from the Court's caseflow management plan, as well as those in the pretrial order.

13.  Final Requirements for trial:   In addition to the requirements set forth by the Court's representative pursuant to the provision above, the following must be filed at least 7 days prior to the commencement of trial.

1.  Trial briefs (for bench trial) or a memorandum of law (for jury trials).

2.  Proposed Voir Dire questions.

3

3. Jury instructions – standard instructions may be set forth by number alone where as special instructions must be set forth verbatim including authority.

4. A proposed verdict form.

We understand that the Court has final discretion on the terms or deadlines of the matters set forth herein and agree to adhere to the final terms as ordered by the Court.

One Stipulation and Order must be signed by all attorneys and submitted to the Judge for signature. After processing, the Assignment Clerk will mail the stipulated and signed pretrial ORDER to the attorneys. That order will reflect the pertinent dates for mediation, case evaluation, settlement conference and trial.

_____                    _____
Attorney for:                                      Attorney for:


_____                    _____
Attorney for:                                      Attorney for:

At a session of said Court held in
The Courts Building in the Village of
Centreville in said County on the
Day of           , 2006

**PRESENT:  HONORBLE PAUL STUTESMAN, Circuit Judge**

**IT IS SO ORDERED**

_____
Hon. Paul Stutesman
Circuit Judge

Mediation (if applicable): _____

Case Evaluation Date: _____

Settlement Conference: _____

Trial Date:           _____

Attest a True Copy:

_____

Clerk

CERTIFICATE OF MAILING

I Hereby certify that I mailed a copy of this notice to the above named parties and/or their attorneys of record to his/her last known address, by ordinary mail, on this date_____

_____

Kathy Griffin, Caseflow Manager

| STATE OF MICHIGAN | NOTICE TO APPEAR | CASE NO. |
|---|---|---|
| 45TH CIRCUIT/COUNTY CLERK | | 19-565-CK-1 |

| Court address | Court telephone no. |
|---|---|
| BOX 189, 125 W MAIN  CENTREVILLE, MI  49032 | 269-467-5531 |

**YOU ARE DIRECTED TO APPEAR AT:**

MARKETPLACE NORTH LLC
P.O. BOX 350

THREE RIVERS, MI  49093

The court address above, courtroom A _____

Plaintiff          ☐ Personal service

v

Judge: HON. PAUL STUTESMAN _____

MOTION INDUSTRIES INC
2 NORTH JACKSON ST
SUITE 605
MONTGOMERY, AL  36104

**FOR THE FOLLOWING PURPOSE:**

**NOTICE OF PRE-TRIAL** _____

**On 9/23/2019 at 9:00:00 AM** _____

Defendant          ☐ Personal service

STEPHEN J HESSEN
ONE MOORSBRIDGE AVE
PO BOX 4010
KALAMAZOO, MI  49003-4010

Offense(s):

Plaintiff's attorney/People          ☐ Personal service

JOHN A. CONWAY
100 E WAYNE ST
SUITE 300
SOUTH BEND, IN  46601

Defendant's attorney          ☐ Personal service

**IMPORTANT:  READ THIS CAREFULLY**

1. Bring this notice with you.
2. No case may be adjourned except by authority of the judge for good cause shown.
3. FAILURE OF THE DEFENDANT TO APPEAR in a civil case may cause a default judgment to be entered.  FAILURE OF THE PLAINTIFF TO APPEAR may result in a dismissal of the case.
4. FAILURE TO APPEAR in a criminal case may subject you to the penalty for contempt of court, and a bench warrant may be issued for your arrest.
5. If you intend to employ a lawyer, s/he should be notified of the date at once.
6. If you require special accommodations to use the court because of disabilities, please contact the court immediately to make arrangements.

Officer: _____

Officer: _____

Clerk/Administrator _____

**CERTIFICATE OF MAILING**

I certify that on this date copies of this notice were served upon the parties/attorneys by ordinary mail at the addresses shown above.

___8/22/19___
Date

Clerk/Administrator _____

MC 06  (6/96)  **NOTICE TO APPEAR**
Send To:          COURT COPY

**STATE OF MICHIGAN**
**IN THE 45TH CIRCUIT COURT FOR THE COUNTY OF ST. JOSEPH**

MarketPlace North, LLC,

        Plaintiff,

v.                            Case No.  2019-565-CK

Motion Industries, Inc.,

        Defendant.

| | |
|---|---|
| Stephen J. Hessen (P41663) | John A. Conway (P80364) |
| Kreis, Enderle, Hudgins & Borsos, | SouthBank Legal: LaDue \| Curran \| Kuehn |
| PO Box 4010 | 100 E. Wayne Street, Suite 300 |
| Kalamazoo, MI  49003 | South Bend, IN 46601 |
| 269-324-3000 | (574) 968-0760 |
| shessen@kreisenderle.com | (574) 968-0761 (fax) |
| | jconway@southbank.legal |

## NOTICE OF FILING NOTICE OF REMOVAL

       The Defendant, Motion Industries, Inc., has removed this case to the United States District Court for the Western District of Michigan, Southern Division. Motion Industries, Inc.'s Notice of Removal is attached.

                         Respectfully submitted,

                         /s/John A. Conway
                         John A. Conway (P80364)
                         SouthBank Legal: LaDue | Curran |Kuehn
                         100 E. Wayne Street, Suite 300
                         South Bend, IN 46601
                         Tel: (574) 968-0760
                         Fax: (574) 968-0761
                         jconway@southbank.legal

                         *Attorney for Defendant Motion Industries, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on August 29, 2019, I served the foregoing document with, via  regular

US first class mail, correct postage prepaid to the following counsel of record:

Stephen J. Hessen (P41663)
Kreis, Enderle, Hudgins & Borsos, P.C.
P.O. Box 4010
Kalamazoo, MI 49003


/s/John A. Conway
John A. Conway